## AETNA INSURANCE COMPANY v. W. E. FITZE.

### Decided January 7, 1904.

**1.—Insurance—Proof of Loss—Evidence.**

A letter from the attorney of the insured to the representative of the defendant held admissible to show that proofs of loss claimed to be sufficient had been furnished by the plaintiff and that the defendant denied all liability, which made it unnecessary for the plaintiff to establish the fact that proofs of loss had been furnished. It was not objectionable as hearsay or as self-serving.

**2.—Same—Keeping Set of Books.**

The terms of the policy not requiring the insured to keep a record of goods taken out of his stock for home consumption, and only to keep a set of books including all sales, purchases and shipments, the court did not err in refusing special instructions to the jury to find for defendant on proof that the insured kept no record of goods taken from his stock for home use.

**3.—Same—"Iron Safe Clause."**

While the "iron safe clause" in a policy of insurance is a warranty the breach of which will avoid the policy, forfeitures are not favored, and it will be construed in favor of indemnity if it is open to two constructions. The inventories and books and evidence as to the manner of keeping books were all before the jury and required only the submission of a substantial compliance with the contract.

**4.—Same—Charge of Court—Proof of Loss.**

Under the facts the trial court properly gave special instruction as follows: In order to avoid the payment by the defendant of the policies sued upon by plaintiff it is not sufficient for defendant to show in the books of plaintiff an occasional clerical error or omission, but in order to have the effect of avoiding the policies sued upon, the defendant must show that the books as kept by the plaintiff were not kept in such way that the defendant could with reasonable certainty arrive at the actual loss and damage sustained by plaintiff, and if from the books you find, notwithstanding such clerical errors or omissions, if any were shown, that defendant could with reasonable certainty ascertain the actual loss occasioned plaintiff by the fire complained of, then you will return your verdict in favor of plaintiff on this issue.

Error from the District Court of Harris. Tried below before Hon. W. P. Hamblen.

*Alexander & Thompson* and *Ewing & Ring,* for plaintiff in error.

*Hutcheson, Campbell & Hutcheson,* for defendant in error.

GARRETT, CHIEF JUSTICE.—W. E. Fitzé brought this action against the Aetna Insurance Company to recover upon three policies of fire insurance amounting to $4500. The defense was the failure of the assured to comply with certain stipulations of the policies known as the "iron safe clause," requiring the taking of inventories, the keeping and preservation of a set of books showing a complete record of the business transacted, including purchases and sales and shipments, and the production after the fire of the two last inventories taken and the books as required. There was a jury trial which resulted in a judgment in favor of the plaintiff for the amount of the policies sued on.

The appeal presents questions upon the admission of evidence, the giving and refusing of charges to the jury, and whether the plaintiff's

right to recover had been lost by a breach of the stipulations contained in the "iron safe clause."

The three policies sued on were issued as alleged and there was a destruction of the goods and building by fire on August 28, 1902, within the periods stipulated therein, and the plaintiff was entitled to a judgment unless there had been a breach of the following conditions of the policy:

"The following covenant and warranty is hereby made a part of this policy:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building, and unless such books and inventories are produced and delivered to this company for examination, this policy shall be null and void; and no suit or action shall be maintained hereon; it is further agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under the policy, nor a waiver of any defense to the same."

The assured took an inventory of his stock in January, 1902, which, together with the last preceding inventory taken in January, 1901, and his books, was preserved in the safe and all were produced and delivered to the company for examination. The assured was a married man and kept house in the town of Livingston, where he did business. During the years 1901 and 1902 he took from his stock dry goods and groceries which were used for the comfort, convenience, maintenance and support of his family. No record was kept of the goods thus used, but their value was estimated by the plaintiff at $30 a month. The books did not show the freights paid and the freight bills were burned in the fire. The freight on the goods were a part of their cost. No account was kept of the cash used by the assured. He did business at only one place, but he had a warehouse near the store upon which there was a separate insurance and which was not destroyed. The inventory of January, 1902, was $5915.35. Subsequent purchases amounted to

$8374.83. The credit sales after January 1, 1902, were $6200.75, and the cash sales were $3523.75. At the time of the fire there was $514 worth of goods in the warehouse. Each policy contained a "three-fourths loss clause;" that is, that the company should not be liable for exceeding its proportionate part of three-fourths of such loss as might occur considering other concurrent insurance.

. The first assignment of error is upon the admission in .evidence of a letter written by one of plaintiff's attorneys to a representative of the defendant. For the purpose of showing that proofs of loss had been made, and if not, formally waived by absolute denial of liability, the plaintiff on cross-examination of P. P. Tucker, the special agent of the defendant, brought out a correspondence between plaintiff's attorneys and the witness. Four letters. were read in evidence. The first was from plaintiff's attorneys to Tucker, stating that proofs of loss had been sent which had been pronounced by him unsatisfactory and proffering to meet objections. In reply to this letter, it was claimed that the "iron safe clause" had not been complied with and it was stated that a strict compliance with all the terms and conditions of the contract would be demanded, but if the attorneys desired to take up the settlement of the claim on a non-waiver agreement that plaintiff had given upon a compromise basis he would be pleased to hear from them. Counsel for plaintiff then introduced and read in evidence the third letter signed J. C. Hutcheson, one of plaintiff's attorneys, which contained the matter objected to, as follows: "I know no reason why the policies of Fitze should not be paid in full. I am not willing to enter into negotiations for less than they provide for, and if this is the attitude which necessitates litigation I do not- see how it is to be avoided." Tucker replied to this letter, noting the determination not to take up the settlement on a compromise basis, and repeating his demand in his former letter for a strict compliance with the conditions of the policies. All of the letters were admitted without objection except the contents of the third above set out. This letter was objected to on the ground that it was an expression of a legal opinion of counsel for plaintiff upon the legal rights of the parties in the case; that it had reference to negotiations for a compromise; and was immaterial and irrelevant to any issue in the case, and prejudicial, and was hearsay and self-serving. The correspondence was admissible to show that proofs of loss claimed to be sufficient had been furnished by the plaintiff and that the defendant denied all liability, which made it unnecessary for the plaintiff to establish the fact that proofs of loss had been furnished. Insurance Co. v. Lee, 73 Texas, 647; Insurance Co. v. Mattingly, 77 Texas, 164.

The letter.was the only one of the four that passed between the parties that was objected to. The statement that the writer knew of no reason why the policies should not be paid in full was not the expression of a legal opinion. The reference to a compromise was in reply to a letter admitted without objection and already in evidence and

could not have injured the defendant. It was not objectionable as hearsay or that it was self-serving, and as one of a series of four letters bearing upon the transaction between the parties it was not irrelevant or immaterial.

The second and third assignments of error complain of the action of the court in refusing special instructions requested by the defendant directing the jury to find a verdict in its favor because the evidence showed a breach of the contract of insurance by the failure of the plaintiff to comply with the stipulations of the policies contained in the "iron safe clause," in failing to keep a complete record of the business transacted including all purchases, sales and shipments, as required by the terms of the policies sued upon; and that the taking by plaintiff from his store of merchandise for the use of his family without making a record of such merchandise was a breach of the stipulation to keep a set of books. The terms of the policy did not require the plaintiff to keep a record of the goods taken out of stock for home consumption. They only required the assured to keep a set of books including all sales, purchases and shipments.

While the "iron safe clause" is a warranty the breach of which will avoid the policy, forfeitures are not favored, and it will be construed in favor of indemnity if it is open to two constructions. The inventories and books and evidence as to the manner of keeping books were all before the jury and required the submission of the question of a substantial compliance with the contract. There was no error in the refusal of the special instructions set out in the fourth assignment of error requiring the jury to return a verdict for the defendant if they believed that the "iron safe clause" had not been complied with although a loss had been sustained exceeding the amount of the policy. The charge of the court correctly submitted the issues to the jury and the requested instruction was not demanded by any exigency of the case.

The following special instruction given at the request of the plaintiff is assigned as error in the fifth assignment, to wit:

"The court is requested by the plaintiff to charge the jury as follows: In order to avoid the payment by defendant of the policies sued upon by plaintiff, it is not sufficient for defendant to show in the books of plaintiff an occasional clerical error or omission, but in order to have the effect of avoiding the policies sued upon, the defendant must show that the books as kept by plaintiff were not kept in such way that the defendant could with reasonable certainty arrive at the actual loss and damage sustained by plaintiff, and if from the books you find, notwithstanding such clerical errors or omissions, if any were shown, that defendant could with reasonable certainty ascertain the actual loss occasioned plaintiff by the fire complained of, then you will return your verdict in favor of plaintiff on this issue."

This instruction was properly directed to the state of the evidence as developed on the trial and there was no error in giving it. There can be no objection to the charges set out in the tenth and eleventh

assignments of error. Evidence was received at great length which showed the contents of the books and the method of keeping them and from which it could be inferred that they were kept in the customary manner of keeping books; all of which made applicable the charges complained of. The use of the "not" in the charge set out in the twelfth assignment is clearly a clerical error which could not have misled the jury and is corrected by the subsequent part of the charge.

The verdict of the jury is fully supported by the evidence, and there being no error requiring a reversal of the judgment, it will be affirmed.

*Affirmed.*